**SLEMAKER v. TRI–STATE MOTORS, Inc.**

No. 5810.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1939.

Irion & Switzer, of Shreveport, for appellant.

Pugh, Grimmet & Boatner and Frederick J. Stewart, all of Shreveport, for appellee.

DREW, Judge.

Harry N. Slemaker, plaintiff in this case, left in the possession of defendant, Tri-State Motors, Incorporated, his 1935 8-cylinder Oldsmobile sedan on December 24, 1936, subject to the following conditions incorporated in a written contract with defendant on defendant's printed form:

That plaintiff would have a credit or trade-in allowance of $625 on his 1935 Oldsmobile in the purchase of a new Oldsmobile; that the price of a new Oldsmobile at the time the contract was executed, December 24, 1936, was $1,182; that plaintiff was to buy a new Oldsmobile "when wanted" and the price effective on the date it was desired by plaintiff would be controlling; that plaintiff would have the privilege of cancelling his contract to purchase a new car if the changed price at the time he desired a new automobile was not agreeable to him; that in the event plaintiff did not elect to buy a new Oldsmobile, under the election last mentioned above, defendant agreed to return any used car left in its possession by plaintiff; and that in the event the used car left in the possession of defendant by plaintiff had been previously sold and plaintiff herein elected not to buy, defendant would pay to plaintiff the amount it had received for said car, less any expense in selling it.

On December 31, 1936, seven days after defendant had received and taken possession of plaintiff's used automobile, defendant sold same to Mr. P. A. Turner for $850, accepting a used car, a 1929 Oldsmobile, from Mr. Turner, and allowing him on the above purchase price a trade-in allowance of $250. Turner paid $100 cash and executed eighteen notes of $33.63 each for the difference.

On August 10, 1937, plaintiff wrote defendant advising it that he did not desire to purchase a new Oldsmobile and asked how much cash would be allowed him on the car he had turned in. Defendant replied that it would allow him $327 cash for his Oldsmobile, which at that time had been sold. This was unsatisfactory to plaintiff and he subsequently, in October of 1937, visited defendant's establishment and inspected the new Oldsmobiles, which were the 1938 models at that time, the sale price of same being $1,297, which was an advance of $115 over the price stipulated in the written contract. Plaintiff was not satisfied with the changed price of the new Oldsmobiles and notified defendant's agents of his election not to buy an Oldsmobile. On November 1, 1937, plaintiff's counsel again notified defendant on behalf of plaintiff that he did not elect to purchase a new Oldsmobile, in accordance with the terms of the contract.

Suit was filed for the price at which defendant sold plaintiff's Oldsmobile, to-wit, $850, less the salesman's commission of $42.50. Judgment was rendered in favor of plaintiff for $600.15, being the allowance agreed on in the contract, less a loss of $24.85, which defendant claimed to have sustained in the transaction.

Defendant appealed and plaintiff has answered the appeal asking that the amount of $850 be allowed, less salesman's commission of $42.50, the amount sued for.

Defendant contends there are two reasons why plaintiff is not entitled to recover in this case. They are as follows:

1. That the written contract provides for a cancellation of the contract to purchase a new car only in the event the price of the new car changed and the changed price is unsatisfactory to plaintiff; that plaintiff based his reason for cancelling or attempting to cancel the contract on other grounds;

2. That there is no evidence properly in the record authorizing a recovery; that the allegations of the petition were not broad enough to allow the admission of evidence to prove that plaintiff attempted to cancel the contract for the reason that the price had been advanced; that plaintiff wrote defendant a letter on August 10, 1937, stating that his health prevented him from driving an automobile and that for that reason he wished to cancel the contract.

At the time plaintiff wrote defendant the letter above mentioned, and in which he stated that his health prevented him from driving an automobile, it was clearly his intention to further postpone the purchase of a new car in the event the Tri-State Motors, Inc., would not give him a satisfactory cash allowance on the automobile of his which it held. Defendant's offer of $327 was unsatisfactory and in October, 1937, plaintiff called on defendant for the purpose of again trying to obtain greater cash allowance, or, on failing

to do so, to buy a new car. It was at this time that he learned that the 1938 models were out and that the price had advanced; whereupon he notified defendant of his election not to purchase a car.

■ We fully agree with defendant's contention that the only basis given to plaintiff to refuse to purchase a new car was an advance in price. The testimony, we think, amply shows that this is the ground availed of by plaintiff, irrespective of his motives in so doing. The testimony of plaintiff and that of his counsel shows that he so notified defendant of this election. This notice was given to defendant after the refusal by it to give him a proper cash allowance for the automobile which he had placed in its possession and which it had sold for $850. When defendant advised Mr. Slemaker of the advance in price, it was not necessary for him to state in so many words that he would not buy the car because the price advance was unsatisfactory. All that was necessary for him to do to obtain a recovery in this suit was to show that the price had advanced and that the advanced price was unsatisfactory to him. This, in our opinion, he has conclusively shown.

Defendant further contends that the fact that Mr. Slemaker bought a Buick automobile in January, 1938, at a price of $1,235, is conclusive proof that the advance in price was not the reason Mr. Slemaker did not buy an Oldsmobile. The Buick which he purchased was $60 less than the advanced price of the Oldsmobile and Mr. Slemaker testified that he considered the Buick a better buy than the Oldsmobile at the advanced price. The purchase of the Buick, we think, evidences the fact that the reason plaintiff did not buy the Oldsmobile was not his health.

■ In defendant's answer, the president of the defendant company while on the witness stand tendered a 1938 Oldsmobile at the advanced price; therefore, the contention of defendant that it had on the floor a 1937 model at the time plaintiff elected not to buy the car, is without merit.

■ Defendant contends that plaintiff's petition does not state that the contract was cancelled because the price of the Oldsmobile had advanced and, as advanced, was unsatisfactory to him. The contract on this point is as follows:

"It is understood and agreed that the price of the above car is subject to change without notice, and price effective on the day of delivery will be the governing price. I, however, have the privilege of cancelling this order, provided the changed price is not satisfactory and upon such cancellation, the deposit will be returned.

"In the event this order is cancelled, or if you are unable to deliver the car, any used car which may have been deposited in part payment of purchase price, shall be returned to me, if still unsold, or payment by me of the actual expenses you have had in repairing, advertising and insuring it, and I agree that you shall have a lien on it for such amount as you have so expended. In the event you have already sold such used car, you are to pay me the amount you have received for it, less any expense you have incurred in selling it and putting it in condition for sale."

Paragraph 6 of plaintiff's petition is as follows: "That the price of a new Oldsmobile at the time the agreement was executed was $1182.00 as stipulated in said agreement; that at the time petitioner elected not to buy a new automobile the price had advanced to an amount of $1295.00, and defendant notified of plaintiff's election."

There is no dispute between plaintiff and defendant as to plaintiff's right to cancel the contract. It was only in the event of a price advance unsatisfactory to him. Reading the language of the contract and that of Paragraph 6 of plaintiff's petition together, there can be no question but that the election on plaintiff's part could have reference only to the election previously referred to in the petition. When plaintiff alleged the terms of the contract relied upon, the further allegation of an advance in price and of such advance being unsatisfactory, is all that is necessary for plaintiff to set forth a cause of action.

■ The lower court arrived at the amount of the judgment, accepting the analysis sheet filed in evidence by defendant. Plaintiff's car was sold seven days after he left it with defendant under the written contract above referred to. As is shown, defendant allowed $250 of the $850 received for the car, a 1929 model Oldsmobile, it accepted in the trade, which defendant in turn sold and accepted in trade as part of the purchase price on a Moon automobile. It sold both the 1929 Oldsmobile and the Moon car for less than

874

the amount allowed for them in trade, and when a final analysis is taken, showing the amount received by the defendant for the car left with it by plaintiff, taking therefrom the amounts paid salesmen, we find that defendant received $600.15, the sum awarded to plaintiff by the lower court. Defendant contends that 50% of this sum should be deducted to take care of overhead expenses of defendant in handling this car. There is no merit in this last contention.

We are of the opinion the lower court has found the correct amount due to plaintiff, and the judgment is therefore affirmed, with costs.